GREGORY A. ANDERSEN, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—86—0004

Opinion filed September 8, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Thomas P. Marnell, Assistant Attorney General, of Chicago, of counsel), for appellant.

162

James A. Kaestner, of Sterling & Stanley, P.C., of Fairview Heights, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

The Secretary of State (Secretary) appeals the order of the circuit court of Sangamon County. Upon administrative review the circuit court reversed the decision of the Secretary denying plaintiff reinstatement of driving privileges.

On May 11, 1981, plaintiff was involved in a one-vehicle automobile accident wherein he "wrapped [his] car around a pole." Plaintiff had consumed a 12-pack of beer that night, and he was driving his automobile with four passengers when the accident occurred. None of those involved were seriously injured, although they were all treated for minor cuts and bruises at a hospital, then released. Plaintiff was arrested and charged with speeding and driving while under the influence of alcohol (DUI). He was convicted of those charges on November 25, 1981, and January 22, 1982, respectively. His license was revoked on March 11, 1982, pursuant to section 6—205(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(a)(2)).

Plaintiff applied informally for a restricted driving permit and also for reinstatement of full driving privileges in February 1985. On February 22, 1985, plaintiff was evaluated by a hearing officer, who recommended that plaintiff's driving privileges be fully reinstated. The Secretary denied plaintiff's application. Plaintiff applied for a formal hearing, which was held on May 2, 1985. This hearing officer recommended that plaintiff's petition be denied. The Secretary thereafter denied the petition. Plaintiff filed a complaint in the circuit court seeking administrative review and arguing the decision of the Secretary was against the manifest weight of the evidence. The circuit court found for plaintiff and entered an order reversing the Secretary. The Secretary filed a timely appeal. The only issue on appeal is whether the Secretary's decision denying plaintiff full driving privileges is against the manifest weight of the evidence. We, therefore, take a more detailed look at the facts in the record.

Plaintiff initially applied for a restricted driving permit in 1982. This file was made part of the record in the instant appeal and plays a significant role in the Secretary's decision. Plaintiff requested a restricted driving permit in order to drive vehicles while at work and submitted a letter from his employer to that effect.

A formal hearing was held on July 14, 1982. At that hearing plaintiff submitted a form showing completion of a remedial education program and an alcohol assessment, both of which were completed by

Frank Hirbe, the alcohol-program coordinator at the Monroe County Mental Health Services, Inc. In the alcohol assessment Hirbe stated that plaintiff had a history of excessive use of alcohol and use of drugs:

"Gregory has shown many of the symptoms of alcoholism except for loss of control. According to the Michigan Alcoholism Screening Test (MAST) Greg scored 29 points with 10 points or more indicated as a score for most alcoholics.

\* \* \*

Gregory first drank at age 15. First became intoxicated at age 16. He first realized a problem at age 18. His longest dry period was 2 months in September and October of 1981.

Gregory indicated he drank beer whenever available, usually weekly. He indicated periods of excessive drinking [sic] there were periods of 2 days to a week when he would not drink. He has not used alcohol in the past 2 weeks.

Gregory first used marijuana at age 14. During the summer of 1979 he started using 2 to 3 joints a day, 1 to 3 days per week, periodically for 27 months. Also during 1979 Greg admitted using speed 1 to 3 days a week for a 4 month period. He is not presently using drugs at this time."

In the evaluation summary, dated April 22, 1982, Hirbe indicated his belief that plaintiff had an alcohol problem and was in need of treatment. He recommended plaintiff participate in outpatient counseling and attend Alcoholics Anonymous (AA) meetings. Hirbe further stated:

"I believe Greg recognizes alcohol and drugs as a problem in his life and is not attempting to abstain from alcohol and drugs and has agreed to continued counseling and AA attendance."

Hirbe updated the evaluation on July 6, 1982, for the formal hearing by adding the statement: "Since April 14, Greg has remained free from alcohol and drugs, and has greatly improved his relationship with family members. He is receiving excellent support. He has been unable to attend AA because of transportation problems." This update still indicated plaintiff had an alcohol problem and that treatment was recommended.

On the remedial-education verification, Hirbe commented: "I feel that Greg has a good attitude and with some assistance should be able to live comfortably without alcohol and drugs." The Secretary denied plaintiff a restricted driving permit finding that plaintiff had a drinking problem and that the Secretary's interest in public safety and welfare prohibited the Secretary from granting plaintiff the restricted driving permit. Plaintiff did not appeal the Secretary's decision.

As mentioned above, plaintiff applied for driving privileges in February 1985. At that time plaintiff submitted an updated alcohol assessment. The assessment by James McVey of the Family Care Center, Inc., stated:

> "Mr. Anderson [sic] states he has only drank on three or four occasions. Those times being Christmas and his brother's wedding, and that he drank only two or three beers at these times. Mr. Anderson [sic] states that he has had no psychiatric or emotional problems and there are no indications otherwise.
>
> * * *
>
> Mr. Anderson [sic] states that he is very comfortable with his present lifestyle and has no desire to drink or use drugs and is appreciative and aware of the gains he has made in the last two to three years."

Plaintiff testified at the hearing that he had not been intoxicated since the date of his accident in May 1981. He had had two or three beers at his brother's wedding two years prior to the hearing. He also would have a glass of wine or two at his parents' home at Christmas or Thanksgiving celebrations. Since the accident he had moved to Missouri and begun work in a factory 65 miles from his home. He managed to get to and from work by riding with a friend. Occasionally he would sleep in a friend's car at work rather than travel home. Plaintiff attributed his drinking problem to peer pressure from schoolmates during his years at high school. He stated that he now avoided the company of his friends if they were drinking. Plaintiff wanted his driving record cleared in Illinois so he would be able to obtain a license in Missouri and, therefore, needed reinstatement of full driving privileges.

On the basis of the above evidence, the hearing officer recommended plaintiff's petition be denied. The hearing officer made the following findings with regard to plaintiff's alcohol use:

> "a) The Petitioner's initial alcohol assessments *** reported that the Petitioner had exhibited many symptoms of alcoholism and scored as an alcoholic on the Michigan Alcoholism Screening Test. Also, it recommended that the Petitioner attend A. A. and enter the Alcoholism Counseling Program.
>
> b) The Petitioner's updated alcohol assessment *** reported that the Petitioner 'states he has only drank on three or four occasions.' The Hearing Officer cannot determine if this means that the Petitioner told the assessor he had only drank three or four times since his 1982 assessment, or if he meant something different. The updated assessment also reported that the Peti-

tioner 'states that he is very comfortable with his present lifestyle and has no desire to drink or use drugs.' If the Petitioner has no desire to drink, the Hearing Officer questions why he continues to do so as his testimony revealed. Although the updated assessment reports that the Petitioner's mother was present for the interview and agreed with the information provided by the Petitioner, the Hearing Officer questions her ability to verify the Petitioner's drinking habits as she does not reside with the Petitioner. In conclusion, the updated assessment reported that the assessor's opinion is that the Petitioner 'is not a high risk to drink and drive at this time.' The Hearing Officer notes that it does [*sic*] state exactly what the risk is, just that it isn't high.

c) In addition to the ambiguities noted above, the updated alcohol assessment does not address the results of the initial assessments nor the recommendations made therein, even though the assessments were performed by the same agency.

d) The Petitioner testified that in the past three years his pattern has been to drink on special occasions, occurring about five times a year.

3) Based on the evidence submitted and elicited, the Hearing Officer is unable to make a proper determination of the nature and extent of the Petitioner's alcohol use/abuse."

The hearing officer made the following conclusions from the evidence:

"1. The Petitioner's past driving record reveals a disregard for public safety and for traffic laws.

2. Given that the Hearing Officer was not able to make a determination of the nature and extent of the Petitioner's use/abuse of alcohol, the Petitioner failed to carry his burden of proving that he would be a safe and responsible driver and that he would not endanger the public safety and welfare."

The Secretary adopted the findings and conclusions of the hearing officer and denied plaintiff's petition.

■■■■ As the supreme court stated in *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088:

"[A] reviewing court is not to reweigh the evidence or make an independent determination of the facts. Rather, its sole function is to ascertain whether the findings of the administrative agency are contrary to the manifest weight of the evidence."

In *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1094, 492 N.E.2d 929, 933-34, we further stated:

"[I]n order for the circuit court to find the Secretary's decision

is against the manifest weight of the evidence, the circuit court must determine, after viewing the evidence in the light most favorable to the Secretary, that no rational trier of fact could have agreed with the Secretary's decision. See *Jackson v. Virginia* (1979), 443 U.S. 307, 324, 61 L. Ed. 2d 560, 576-77, 99 S. Ct. 2781, 2791-92.''

After an individual's license has been revoked, the Secretary has considerable discretion in issuing that person another license. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b).) The Secretary has promulgated regulations to assist him in this task. These regulations have the force and effect of law. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929.

■ The Secretary argues that the evidence reasonably supports the decision to deny plaintiff's petition for driving privileges. The Secretary contends that, in view of plaintiff's first alcohol assessment, plaintiff did not submit evidence sufficient to show plaintiff was free from an alcohol problem. The regulations specifically address the requirements for receiving driving privileges after one has had a license revoked or suspended because of offenses involving alcohol and provide in pertinent part:

"a) In all applications for reinstatement or RDPs applicants must submit an alcohol or drug evaluation and evidence of successful completion of an alcohol- or drug-related driver remedial course and/or evidence of successful completion of treatment or proof of adequate rehabilitative progress.

* * *

3) The alcohol or drug evaluation must contain, at a minimum, a report of objective testing of the applicant, a history of the applicant's use or abuse of alcohol the present status of applicant's use of alcohol, periods of abstinence or sobriety, prognosis, and recommendation for treatment if needed, and the credentials of the assessor.

* * *

5) Before either relief may be granted, the alcohol or drug evaluation must be favorable, which is defined as showing that the applicant has no current or ongoing problem with alcohol or drugs and is not likely to have a problem in the future.

* * *

e) Applicants with a clinical impression of alcohol abuse/alcoholism should have a minimum of twelve (12) consecutive months of documented abstinence. Waivers are discretionary but

should be no less than six (6) months continued abstinence." (92 Ill. Admin. Code, ch. II, sec. 1001.440 (1984); 8 Ill. Reg. 4220, 4244-46 (1984) (effective April 1, 1984).)

The Secretary argues that plaintiff did not fully comply with these regulations in that the second alcohol assessment did not indicate any objective testing. Moreover, the Secretary states that the second alcohol assessment was based solely on self-serving statements by the plaintiff. We agree.

Plaintiff's initial alcohol assessment in 1982 included results from an objective test, the MAST. The assessment discussed plaintiff's prior history of heavy alcohol and drug use. The counselor's conclusions were that plaintiff had an alcohol problem and was in need of treatment. Plaintiff never received treatment nor attended AA sessions. Plaintiff's second alcohol assessment is based solely on plaintiff's statements made to the counselor. There are no objective tests to support the counselor's conclusions. Further, the second assessment does not clearly address the serious findings in the first assessment but leaves the reader wondering about the purported disappearance of plaintiff's alcohol problem. We question how the second assessment can convey the impression that plaintiff has no current or ongoing problem without addressing and overcoming the findings of the first assessment.

Plaintiff argues that he showed sufficient rehabilitative progress as an alternative to submitting a favorable and complete alcohol assessment. The only other evidence plaintiff offered, however, was his own testimony. Plaintiff's testimony did not clearly overcome the impressions cast on him by the first alcohol assessment. Plaintiff explains that the Secretary should have taken notice of the stage in life when plaintiff did his heavy drinking and note, too, the commendable efforts to maintain his job without the benefit of driving himself to work. The issue, however, is whether plaintiff is currently a risk to the public safety and welfare with a driver's license. In light of the serious nature of plaintiff's problem as reported in the first assessment, and the unsupported conclusions offered in the second assessment, we cannot say the trial court's decision that the Secretary's decision to deny plaintiff driving privileges was correct. The decision of the Secretary is not against the manifest weight of the evidence.

Accordingly, the order of the circuit court is hereby reversed and the decision of the Secretary is reinstated.

Circuit court reversed; order reinstated.

GREEN and MORTHLAND, JJ., concur.